## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| **BIANCA A. HUGHLEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **Civil No. SAG-23-02980** |
| | * | |
| **SOUTHWEST AIRLINES,** | * | |
| | * | |
| **Defendant.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### MEMORANDUM OPINION

Plaintiff Bianca A. Hughley, who is self-represented, filed this Complaint against her former employer, Southwest Airlines ("Southwest"). ECF 1. Liberally construed, her Complaint contains five separate claims for relief: breach of contract, hostile work environment, race- and disability-based wrongful termination, failure to accommodate, and violation of the Maryland Healthy Working Families Act (referenced in the Complaint as "Maryland Sick and Safe Leave"). *Id.* Southwest filed a Motion to Dismiss the Complaint. ECF 12. Plaintiff opposed the motion, ECF 14, and Southwest filed a reply, ECF 17. This Court has reviewed the motion and the related briefing. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, Southwest's motion to dismiss will be GRANTED, and the Complaint will be dismissed without prejudice.

### I.    FACTUAL BACKGROUND

The following facts are derived from the Complaint, ECF 1, and are assumed to be true for purposes of this motion.[1] In April, 2022, before she began training with Southwest, Plaintiff

---

[1] Plaintiff's Complaint is not a model of clarity, and some relevant facts are not included. For example, the parties appear to agree that Plaintiff worked as a flight attendant, though it is not specified in the Complaint. The reasons for her police report and arrest also are not described.

requested an accommodation for her disability and provided a physician form in support. ECF 1-1 ¶ 5a.

During her employment, Plaintiff received "over six customer appreciation letters." *Id.* ¶ 4a. However, she "often found herself defending herself against false claims of contract violations," including "wearing headphones on the plane in front of customers." *Id.* On one occasion, Plaintiff "was verbally and almost physically assaulted by a White female flight attendant on the plane," and the situation continued to escalate at the hotel. *Id.* ¶ 4b. Plaintiff's supervisor, Katie McLaren, refused to remove Plaintiff from the trip and simply advised her to have a cordial relationship with the other flight attendant. *Id.* The assistant manager of BWI Airport, who personally knew the other flight attendant, investigated the incident but Plaintiff never received an update. *Id.* During the investigation, the assistant manager contacted co-workers to ask if Plaintiff "was a good employee." *Id.*

On August 17, 2022,[2] Plaintiff called in sick to Southwest "to attend to a matter at the Baltimore County police station" while she was "dealing with legal proceedings protected under Maryland Sick and Safe Leave." ECF 1 at 6. Plaintiff was arrested, taken to the hospital and treated "for her disability," then taken to the Baltimore County Detention Center ("BCDC"). *Id.*; ECF 1-1 ¶¶ 1b, 2a. Plaintiff spoke to her supervisor, Ms. McLaren, from BCDC because she would miss her work shifts. *See* ECF 1-1 ¶ 2a. When Plaintiff advised Ms. McLaren that she did not have computer access to change her schedule, Ms. McLaren directed Plaintiff to try to get a friend to

---

[2] Plaintiff's Complaint later states that the date of her arrest was October 17, 2022. ECF 1-1 ¶ 1b. The Court assumes that it was the same incident, and that it occurred in August, 2022, because Plaintiff did not expressly dispute Southwest's factual statement in her opposition, though she stated that the "initial incident occurred on or about August 6, 2022." ECF 14 at 3.

help her change her schedule while incarcerated. *Id*. In order to have a co-worker input the changes, Plaintiff had to share her username and password information. *Id*. ¶ 3.

Plaintiff was released from the detention center on November 7, 2022, and noticed that she had been scheduled for a fact-finding meeting on November 8, 2022. *Id*. ¶ 2a. Upon her release, however, Plaintiff learned that she had been granted a "personal leave of absence," which she had not requested, from November 3, 2022, to November 13, 2022. *Id*. The fact-finding meeting occurred during that span, and Plaintiff did not attend because while on personal leave of absence, she was "under no obligation and forbidden to conduct or engage in company business." *Id*. ¶ 3b.

After the fact-finding meeting, Southwest terminated Plaintiff for giving her username and password to a co-worker and for calling in sick twice when "she was incarcerated." *Id*. ¶¶ 3a, 3b. On the first occasion, Plaintiff asserts that she was going to file a police report, became sick, and was treated at the hospital. *Id*. ¶¶ 1b, 3b. On the second occasion, Plaintiff had no choice but to call out sick because she could not access a computer from jail to notify Ms. McLaren of her absence. *Id*. ¶ 3b. And as to the provision of her password to co-workers, Plaintiff asserts that Ms. McLaren effectively advised her to commit that terminable offense by suggesting that she ask a co-worker to assist. *Id*. ¶ 6.

Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 4, 2023. ECF 12-2.[3] The charge alleges that Southwest subjected Plaintiff to disability and race discrimination on November 18, 2022, the date of her

---

[3] Although Plaintiff did not attach the EEOC charge to the Complaint or make specific reference to it (other than attaching the EEOC's dismissal notice to the Complaint), the Court may consider the charge at this stage because Southwest attached it to its motion to dismiss and "[c]ourts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint." *Bowie v. Univ. of Md. Med. Sys.*, No. 14-cv-3216-ELH, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) (collecting cases).

termination. The EEOC dismissed Plaintiff's charge and notified Plaintiff of her right to sue. ECF 1-2. This lawsuit then ensued.

## II.    LEGAL STANDARD

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

Because Plaintiff is self-represented, her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*,

4

584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, No. DKC 10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."), *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242–43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985); *see also M.D. v. Sch. Bd.*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (unpublished) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

In addition to bringing a Rule 12(b)(6) motion, a defendant may move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Once a challenge is made to subject matter jurisdiction, the Plaintiff bears the burden of proving, by a preponderance of evidence, that subject matter jurisdiction exists. *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Therefore, the court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

### III.    ANALYSIS

#### A.  Breach of Contract Claim

Southwest seeks to dismiss Plaintiff's breach of contract claim, arguing that it is preempted by the Railway Labor Act ("RLA"). That statute provides "for the prompt and orderly settlement" of disputes between rail and airline workers and carriers "growing out of . . . the interpretation or application" of a collective bargaining agreement ("CBA"). 45 U.S.C. §§ 151a, 153(i). Disputes, like this one, seeking to enforce the terms of a CBA are known as "minor disputes." *Consol. Rail Corp. v. Ry. Lab. Execs.' Ass'n*, 491 U.S. 299, 302 (1989) ("[M]ajor disputes seek to create contractual rights, minor disputes to enforce them."). Minor disputes are subject to a mandatory arbitration procedure described in the RLA and cannot be litigated in the federal courts. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252–53 (1994). In sum, any claim requiring a court to interpret or enforce a CBA's terms constitutes a minor dispute and is preempted by the RLA. *See Consol. Rail. Corp.*, 491 U.S. at 304; *Polk v. Amtrak Nat'l R.R. Passenger Corp.*, 66 F.4th 500, 507 (4th Cir. 2023) ("Since [the plaintiff's] Title VII claim requires the interpretation of a CBA, it is a minor dispute.").

In this case, Plaintiff argues that Southwest violated the CBA's provisions by holding a fact-finding meeting during her leave of absence. ECF 1-1 ¶ 2b. She notes that the CBA gives the company "the right to discharge, discipline, or furlough any employee during the probation period without cause and without a hearing." ECF 14-1. And the CBA denies union representation to probationary flight attendants "in matters involving discipline or discharge." *Id.* Plaintiff contends that, as a result of those provisions, she could not avail herself of the CBA's grievance process with respect to her claims, and the Court should not find her claims preempted under the RLA.

Interpretation and enforcement of the CBA's language, however, is exactly what would be required for this Court to adjudicate Plaintiff's breach of contract claim, making it a minor dispute. The fact that Plaintiff has limited CBA protection as a probationary employee does not remove her minor dispute from the scope of statutory preemption. In a case involving an analogous statute to the RLA, the Fourth Circuit determined that a breach of contract claim was preempted despite the fact that the plaintiff was foreclosed from participation in the CBA's grievance process (in that case, by virtue of a settlement agreement, not the employee's probationary status). *See Davis v. Bell Atl.-W. Va., Inc.*, 110 F.3d 245, 246 (4th Cir. 1997). Similarly, Plaintiff's breach of contract claim remains a minor dispute preempted by the RLA. It must therefore be dismissed with prejudice.

### B.  Hostile Work Environment

Plaintiff alleges that Southwest subjected her to a hostile work environment, which exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). To establish such a claim, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's [race or disability]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)).

Plaintiff has failed to plead facts establishing the requisite severe and pervasive conduct based on her status in any protected class.[4] She has alleged a single altercation with an employee of a different race, but she has not alleged that any race-based comments were made as a part of that incident. She has not pleaded any other facts to establish that the conflict was based on her membership in a protected class. Although she has also alleged dissatisfaction with the ensuing investigation, she again has not alleged any race-based or disability-based comments or statements at any point. Simple mistreatment, unfair decision-making, or rude conduct does not suffice to support a hostile work environment claim. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("[C]omplaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor" do not suffice. (internal citations and quotation marks omitted)); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (finding a workplace dispute and "some perhaps callous behavior by her superiors" insufficient for a plaintiff to establish severe or pervasive activity, even at the Rule 12(b)(6) stage); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003) (determining that "disrespectful, frustrating, critical, and unpleasant" workplace interactions do not create a hostile work environment). Plaintiff's other assertion, that her supervisor often counseled her for false assertions of misconduct, falls under the same umbrella:

---

[4] Southwest also argues that Plaintiff failed to exhaust her administrative remedies because she did not timely file her EEOC charge of discrimination and because she did not include allegations of a hostile work environment in the charge she filed. ECF 12-1 at 10. The Court agrees with Southwest insofar as Plaintiff failed to allege a hostile work environment in her EEOC charge and therefore failed to exhaust her administrative remedies as to this claim. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." (citation omitted)).

absent any facts suggesting some connection to her race or disability, unpleasant workplace interactions and even unfair treatment cannot alone support a hostile work environment claim.

### C. Race or Disability-Based Discriminatory Termination

With respect to the termination of her employment, Plaintiff also presents no direct evidence of discrimination, such as her employer citing to her race or disability as a basis for her firing. Therefore, to prove her discrimination claims, she must proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The elements require that the plaintiff show that: "(1) [s]he was a member of a protected class; (2) [s]he was satisfactorily performing [her] job at the time of the termination; (3) [s]he was terminated from [her] employment; and (4) the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). While Plaintiff need not plead a prima facie case to survive a motion to dismiss, she must at least plead facts which plausibly state a discrimination claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002).

Plaintiff has not done so in her Complaint. She alleges that her supervisor, Ms. McClaren, fell outside of her protected classes and made the decision to terminate her. But she has not pled in her Complaint that any similarly situated employee was treated differently. Specifically, she has not alleged that any other employee called in sick while incarcerated or transferred login and password information to a co-worker and still retained employment. Her assertion in her opposition that Ms. McClaren is similarly situated to her is unavailing, as Plaintiff has not alleged that Ms. McClaren engaged in similar conduct and received different discipline. *See* ECF 14 at 5. Also in her opposition, Plaintiff refers to another employee who was incarcerated, did not contact the employer, and was given a leave of absence. *Id.* It is unclear whether (1) that employee was

similarly situated, since they apparently did not call in sick; or (2) the employee falls into the same protected classes as Plaintiff, because she suggests that she will learn "the name, sex, and disability status" of the other employee in discovery. Regardless, a complaint cannot be amended through motions briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). So even if those new allegations would be sufficient to state a plausible claim, they have not been asserted in Plaintiff's Complaint, which must be dismissed.

Additionally, Plaintiff's Complaint does not adequately state a claim for disability discrimination because it does not adequately allege that she suffers from a disability. A "disability" under the Americans with Disabilities Act ("ADA") is not simply a diagnosis but must be a "physical or mental impairment that substantially limits one or more major life activities" of the employee.[5] 42 U.S.C. § 12102. While Plaintiff's Complaint asserts that she suffers from "Diabetes/Hypertension," ECF 1 at 5, those diagnoses alone do not allege facts supporting a basis for a disability-based claim, absent some description of how they substantially limit her major life activities. *See Bennett v. Kaiser Permanente*, 931 F. Supp. 2d 697, 709 (D. Md. 2013) ("Plaintiffs cannot show that an impairment severely restricts a major life activity simply by submitting evidence of a medical diagnosis of an impairment." (internal quotations and citation omitted)). For that additional reason, Plaintiff's disability discrimination claim must be dismissed.

### D.  Failure to Accommodate

Plaintiff's Complaint, as drafted, also fails to state a plausible claim for failure to accommodate her disability. It is simply devoid of any facts to allow this Court to ascertain (1)

---

[5] The ADA's other definitions of disability, having a record of a disability or being regarded as having a disability, are not at issue in this case as the Complaint is presently pled.

whether Plaintiff has a qualifying disability, (2) the nature of the accommodation she requested shortly after her hire, or (3) in what manner her requested accommodation was denied. As noted above, simply asserting medical diagnoses does not establish disability, because a plaintiff must show substantial limitation in major life activities to qualify for statutory protections. And Plaintiff has not pleaded facts connecting her eventual termination to any accommodation she originally requested, particularly because she has not alleged the nature of the accommodation in the first instance. As presently pleaded, then, Plaintiff's failure to accommodate claim must be dismissed.

### E.  Maryland Healthy Working Families Act

Finally, Plaintiff asserts a claim under Maryland's Healthy Working Families Act ("MHWFA"). However, that statute does not permit an employee to assert a private right of action unless (1) the employee has filed a complaint with the Commissioner of Labor and Industry, (2) the Commissioner finds a violation of state labor laws and assesses damages or a civil penalty against the employer, and (3) the employer fails to comply with the Commissioner's order. *See* MD. CODE ANN. LAB. & EMPL. § 3-1308. Plaintiff has not adduced any evidence that the latter two criteria were met. She attached a letter to her opposition from the Commissioner closing its file, which evidences that she filed a complaint, but it does not demonstrate that the Commissioner issued an order or that Southwest failed to comply with any such order. *See* ECF 14-6.

Additionally, even had those three criteria been satisfied, Plaintiff has not alleged facts plausibly asserting that the complaint she filed at the police station pertained to "domestic violence, sexual assault, or stalking." MD. CODE ANN. LAB. & EMPL. § 3-1305(a). She did not attach the complaint or describe its nature, other than to assert conclusory statements that the proceedings were "covered under Maryland Sick and Safe Leave [Act]." ECF 1-1 ¶ 1a. In light of her seemingly contradictory suggestion that the situation related to "a hostile and toxic landlord/tenant situation,"

*Id.* ¶ 1b, Plaintiff would need to allege more specific facts to state a plausible claim, even if she were able to meet all three statutory criteria to pursue an MHWFA claim.

**IV.      CONCLUSION**

For the reasons set forth above, Southwest's Motion to Dismiss, ECF 12, is granted. All of Plaintiff's claims, except for her breach of contract claim, are dismissed without prejudice. Her breach of contract claim is dismissed with prejudice as it is preempted. Should Plaintiff wish to file a motion seeking leave to amend her complaint, attaching her proposed amendment, she must do so within thirty days of the date of this memorandum. A separate Order follows, which will CLOSE this case.

Dated: April 18, 2024                                      _____/s/_____
                                                                            Stephanie A. Gallagher
                                                                            United States District Judge

12